UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KYEEM KING,

   Plaintiff,

v.

PRINCE GEORGE'S COUNTY
CORRECTIONAL
FACILITY/GOVERNMENT,
CORENNE LEBBE, *Warden*,
CAPTAIN BURR,
MAJOR HUMPHRIES,
CAPTAIN GILMORE,
LT. DIXON and
LT. WEBER,

   Defendants.

Civil Action No. TDC-23-2966

**MEMORANDUM OPINION**

Self-represented Plaintiff Kyeem King, an inmate confined at the Western Correctional Institution in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 against Defendants the "Prince George's County Correctional Facility/Government"; Corenne Lebbe, Warden of the Prince George's County Correctional Center ("PGCCC"); and five Prince George's County Department of Corrections ("PGCDC") correctional officials. King alleges that, while he was confined at PGCCC during the COVID-19 pandemic, he was subjected to conditions of confinement that violated the Eighth Amendment to the United States Constitution. Defendants have filed a Motion to Dismiss, which is now fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED.

## BACKGROUND

In his Amended Complaint, King states that he was incarcerated at the PGCCC in Upper Marlboro, Maryland from June 10, 2019 through October 22, 2023. King asserts that during the COVID-19 pandemic, he was forced to have a cellmate, in violation of social distancing requirements mandating six feet of separation. He also asserts that Defendant Lt. Dixon placed him in a segregation unit cell without working lights for 20 days, and that on a different occasion, Defendant Lt. Weber placed him in a segregation unit cell without working lights for 45 days. According to King, the requirement to have a cellmate defeated the purpose of the modified recreation schedule which allowed detainees to have only one hour out of their cells during the COVID-19 pandemic. King seeks monetary damages as well as a declaratory judgment.

## DISCUSSION

In their Motion to Dismiss, Defendants seek dismissal on the grounds that the PGCDC is not an entity subject to suit; the claims asserted are barred by the doctrine of *res judicata* based on a prior class action case relating to conditions at PGCCC during the COVID-19 pandemic; King has failed to exhaust administrative remedies; the claims are barred by the statute of limitations; and King has failed to state sufficient facts to state a claim. In his memorandum in opposition to the Motion, King requests that the Court strike the Motion and also requests that counsel be appointed to represent him in this case. Because there is nothing improper about the Motion filings, the request to strike will be denied.

I.  **Legal Standard**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II.     Prince George's County Correctional Facility and Government

Although Defendants argue that the claim against "Prince George's County Correctional Facility/Government" does not identify a proper defendant, the Court construes the reference to "Government" to signify that the claim is against Prince George's County as a governmental entity. Generally, a local government such as a county "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Here, however, King has not alleged that the purported constitutional violations—his placement in cells with a cellmate or without lights—were the result of such a custom or policy. Where King has not asserted a proper *Monell* claim against the County, the Court will dismiss the claims against the County.

3

### III.     Defendants Lebbe, Humphries, and Gilmore

In his pleadings, King references Warden Lebbe, Major Humphries, and Major Gilmore only once each, by identifying them as supervisors of the other named defendants. Specifically, King states that he was placed in the segregation unit twice "under care and custody of Corenne Lebbe," the Warden of PGCCC. Am. Compl. at 4, ECF No. 11. He states that Major Humphries and Major Gilmore were the supervisors of Captain Burr, who allegedly failed to respond to his administrative grievance. *Id.* King provides no other factual allegations against these Defendants.

Generally, the doctrine of *respondeat superior*, or vicarious liability, is not applicable to claims under 42 U.S.C. § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). To hold a defendant liable as a supervisor, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that [the] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)). Where, as here, King fails to make any of the requisite allegations regarding supervisory liability, the Court will dismiss the claims against Warden Lebbe, Major Humphries, and Major Gilmore.

### IV.     Res Judicata

Defendants argue that King's claims relating to COVID-19 are barred by the doctrine of *res judicata* because he was a putative member of the class in a class action case involving the same subject matter, *Seth v. McDonough*, No. PX-20-1028 (D. Md. 2020). *Res judicata*, also

known as claim preclusion, "precludes the parties or their privies from relitigating issues that were or could have been raised" in a preceding case resolved by a final judgment on the merits. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The doctrine *of res judicata* applies when there is "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id.* at 354–55 (quoting *Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)). "As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990)).

Here, Defendants' *res judicata* argument fails, at a minimum, because they have not established a final judgment on the merits in *Seth*. A class action settlement may constitute a final judgment on the merits for purposes of *res judicata* if the class is certified and the agreement is approved by the Court. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984); *In re MI Windows & Doors, Inc.*, 860 F.3d 218, 223–25 (4th Cir. 2017). Here, however, Seth was resolved with the issuance of an Order on June 29, 2021 stating only that the parties had "settled, including all counterclaims, cross-claims and third-party claims, if any" and that the case was therefore dismissed. Settlement Order at 1, *Seth*, No. PX-20-1028, ECF No. 184. Based on the docket, it does not appear that the parties submitted the settlement agreement to the Court for approval, that the class was certified, that putative class members were notified of the settlement and provided with an opportunity to opt-out of or object to the settlement, or that the Court granted final approval, as required for the settlement of the claims of class members. *See* Fed. R. Civ. P.

23(e). The Court therefore cannot find on this record that there was a final judgment on the merits as required to apply *res judicata*.

Although a settlement agreement arguably could form the basis for a dismissal of claims if the plaintiff was a party to that agreement and the agreement provided a release of claims, Defendants have not provided a copy of the settlement agreement or otherwise established that King was a party to that agreement. Thus, on the present record, the Court cannot find that the resolution of *Seth* precludes King's claims.

## V.   Exhaustion of Administrative Remedies

As to all claims, Defendants seek dismissal on the grounds that King failed to exhaust administrative remedies prior to filing this case. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An

administrative remedy is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 578 U.S. at 643–44.

Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007). Defendants, however, have not provided sufficient facts from which the Court could conclude that King failed to exhaust administrative remedies. They have not described or provided the PGCCC administrative grievance policy, and they have not demonstrated, through filings or attestations to the lack of filings, that King did not pursue and complete each step of the administrative grievance process as to his claims. Although in his Amended Complaint, King has asserted that after filing an administrative grievance, he did not complete the appeal process, he also stated that he never received a response to his administrative grievance. If an administrative grievance policy does not authorize a prisoner to file an appeal until he has received a response, King could plausibly argue that he exhausted all remedies that were available to him. *See Hayes v. Dahlke*, 976 F.3d 259, 270–71 (2d Cir. 2020) (collecting cases from various circuits holding that if prison officials do not respond to an administrative grievance by a mandatory deadline, the prisoner may be deemed to have exhausted administrative remedies). Because Defendants have not provided the administrative grievance policy and have failed to provide any facts relating to the history of King's filing of administrative grievances and their disposition, the Court cannot dismiss King's claims based on a failure to exhaust administrative remedies. In the future, PGCCC must include such information if it seeks dismissal or summary judgment on this basis.

## VI. Statute of Limitations

Although Defendants argue that King's claims are barred by the statute of limitations, such a claim is an affirmative defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) Thus, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.* "[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," but "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

For a § 1983 claim asserted in Maryland, the statute of limitations is three years. *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 388 (4th Cir. 2014). In his pleadings, King does not specify the dates of the relevant events, and there is nothing about his allegations that necessarily establishes that his placement in a cell with another inmate or without lights occurred outside the limitations period. The Court therefore cannot dismiss King's claims on this basis.

## VII. Constitutional Claims

The Court does find, however, that King has failed to allege sufficient facts to state a plausible claim for relief on his remaining claims. Although King argues that the alleged misconduct in this case violated the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). For conditions of confinement to violate the Fourteenth Amendment, the conditions must amount to punishment of the pretrial detainee before any adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[N]ot every inconvenience encountered during pretrial

detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). A particular restriction or condition of confinement amounts to unconstitutional punishment if it was imposed with an express intent to punish or if it was "not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018) (quoting *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005)). When the claim involves a failure to protect a pretrial detainee from harm or to address a medical need, the pretrial detainee must plead that there was a condition that posed a substantial risk of serious harm, that the defendant knew or should have known of the condition and that there was an unjustifiably high risk of harm but failed to act, and that as a result, the detainee was harmed. *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). This standard requires "objectively unreasonable" action or inaction that is more than negligence. *Id.* at 611–12.

### A.    COVID-19

As to the claim relating to COVID-19, King's sole allegation is that at some unspecified time, he was placed in a cell with another inmate even though there was a general understanding in society that individuals should remain six feet apart to minimize the spread of COVID-19. As an initial matter, he has not identified a specific defendant who placed him in such a cell, so he has not stated a plausible claim on this issue in relation to any of the named defendants.

As to the substance of his claim, courts have recognized that maintaining a six-foot separation among prisoners during the pandemic, including in relating to bunks or cells, may not have been possible. *See, e.g., Duvall v. Hogan*, No. 94-2541, 2020 WL 3402301, at *14 (D. Md. June 19, 2020); *Hallinan v. Scarantino*, F. Supp. 3d 587, 605–06 (E.D.N.C. 2020). In the related Eighth Amendment context, "the inability of detainees to practice social distancing at all times

does not, without more, demonstrate" a constitutional violation, and prison officials are not required "to take all conceivable steps to prevent the spread of COVID-19, provided their response to the virus remain[ed] reasonable." *Duvall*, 2020 WL 3402301, at *14; *see Butler v. Forsyth Cnty. Sheriff's Off.*, No. 21cv782, 2023 WL 5177497, at *7 (M.D.N.C. Aug. 11, 2023) (finding that having a cellmate at various times during the COVID-19 pandemic did not establish a constitutional violation); *Plata v. Newsom*, 445 F. Supp. 3d 557, 565 (N.D. Cal. 2020)) (finding that "planning for anything less than six-foot distancing between all prisoners (and staff) at all times," did not violate the Eighth Amendment). Thus, whether a prison's response to COVID-19 was objectively reasonable requires consideration of the full range of mitigating measures taken or not taken by a prison. *Cf. Duvall*, 2020 WL 3402301, at *13–14 (considering not only the distance between bunks, but also policies and actions relating to sanitation, masks, accommodations for vulnerable detainees, education of detainees, and other measures in evaluating whether conditions of confinement violated the Eighth Amendment); *Reese v. Bounds*, No. 20-3080, 2021 WL 849108, at *8 (D. Md. Mar. 5, 2021) (in finding that pretrial detainees were not subject to unconstitutional conditions during the COVID-19 pandemic under an Eighth Amendment standard, considering the full range of COVID-19 mitigating measures taken). Here, however, King has provided no allegations relating to the state of the COVID-19 pandemic at the time; the feasibility, in light of the detainee population, of providing each detainee with a single cell; and what steps, if any, PGCCC took to mitigate the risk of contracting COVID-19, whether in relation to sanitation, mask or quarantine policies, or otherwise. Without allegations relating to the full range of conditions, the Court cannot find that King has stated a plausible claim that his placement in a cell with another inmate either constituted punishment or an "objectively

unreasonable" response to a substantial risk of harm, as required to establish a Fourteenth Amendment violation. *Williamson*, 912 F.3d at 178; *Short*, 87 F.4th at 611–12.

### B. Cell Lights

Second, as to the claim relating to cell lights, King alleges only that he was placed in a segregation cell without working lights, on two separate occasions, once by Lt. Dixon for 20 days and once by Lt. Weber for 45 days. These discrete facts, without more, are insufficient to establish a plausible claim for relief. He has provided no facts that would support the conclusion that either correctional officer had an intent to punish, and he has not alleged facts establishing that these defendants were aware of the lack of working lights or of how long that they remained out of order while King was in the cell. The allegations also fail to describe the actual conditions faced by King, including whether lights in the cell block provided some illumination in his cell and the level of any such illumination. Thus, King's allegations are not sufficient to state a valid Fourteenth Amendment claim based on the lack of working lights in his cell. *See Hurley v. Downing*, No. 17-446, 2018 WL 576886, at *4 (D.S.C. Jan. 4, 2018) (finding no Fourteenth Amendment violation arising from the lack of a working cell light for multiple months in part because the facts did not establish that the defendants were sufficiently notified of the problem).

## VIII. Appointment of Counsel

As for King's request for appointment of counsel, there is no absolute right to appointment of counsel. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). A federal district court, in its discretion, may appoint counsel in a civil case when an indigent party presents exceptional circumstances. 28 U.S.C. § 1915(e)(1); *see Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Based upon a "fact specific, two-part inquiry," a court may find exceptional circumstances if it finds that (1) "the plaintiff has a colorable claim"; and (2) "considering the claim's objective

complexity and the plaintiff's subjective abilities," the plaintiff "lacks the capacity to present it." *Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024).

As discussed above, the Court has found that King has not stated a colorable claim. Even if such a claim could be established, the Court finds that, based on his filings to date, King has demonstrated the ability to present his claims sufficiently so that the Court could fairly evaluate them, and that the case did not progress to the point of discovery, hearing, or a trial that may necessitate having counsel. The request for appointment of counsel will therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED, and King's claims will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date:  November 15, 2024

THEODORE D. CHUANG
United States District Judge